**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| READING HEALTH SYSTEM, | |
| Plaintiff, | |
| vs. | Case No. 5:15-cv-01412-LS |
| BEAR STEARNS & CO., INC., n/k/a J.P. MORGAN SECURITIES LLC | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS COMPLAINT**
**AND MOTION TO COMPEL ARBITRATION**

**Table of Contents**

I.      INTRODUCTION .........................................................................................................1

II.     SUMMARY OF RELEVANT FACTS ......................................................................2

        A.      At Defendant's Recommendation, Plaintiff Issued Approximately $519 Million
                in Auction Rate Securities and Entered into Several Related Swap Derivative
                Contracts with Defendant's Affiliate .......................................................................2

        B.      Reading Alleged in Arbitration It Was Misled By JPMorgan Regarding Auction
                Rate Securities and That Reading Suffered Injury When JPMorgan Allowed the
                Market to Collapse. ..................................................................................................4

III.    LEGAL ARGUMENT .................................................................................................5

        A.      This Court has Jurisdiction Over The Instant Motion And Reading's Complaint to
                Compel Arbitration ...................................................................................................5

        B.      Strong Federal Policy Creates A Presumption In Favor of Arbitration ..................6

        C.      The Federal Arbitration Act and FINRA Rule 12200 Require JPMorgan to
                Arbitrate Reading's Claims.......................................................................................7

        D.      The Eastern District of Pennsylvania is the Appropriate Court to Decide Whether
                JPMorgan Must Arbitrate This Dispute ..................................................................10

        E.      All of Plaintiff's ARS Claims Should Be Arbitrated..............................................12

                1.      Reading's Broker-Dealer Agreements Do Not Preclude FINRA
                        Arbitration ...................................................................................................12

                2.      Section 29(a) of the Securities Exchange Act of 1934 Prevents Waiver of
                        FINRA Arbitration ......................................................................................14

IV.     CONCLUSION...........................................................................................................15

## **Table of Authorities**

**Cases**

*AES Corp. v. Dow Chem. Co.*,
  325 F.3d 174 (3d Cir. 2003)................................................................. 15

*In re Am. Express Fin. Advisors Secs. Litig.*,
  672 F.3d 113 (2d Cir. 2011)................................................................. 7

*Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.*,
  628 F. Supp. 2d 674 (E.D. Va. 2009) ................................................. 11

*Ansari v. Qwest Commc'ns Corp.*,
  414 F.3d 1214 (10th Cir. 2005) ........................................................... 11

*Bao v. Gruntal & Co.*, Inc.,
  942 F. Supp. 978 (D.N.J. 1996) .......................................................... 12

*Caiola v. Citibank, N.A.*,
  295 F.3d 312 (2d Cir. 2002)................................................................. 15

*Citibank, N.A. v. Itochu Int'l, Inc.*,
  No. 01 Civ. 6007, 2003 WL 1797847 (S.D.N.Y. Apr. 4, 2003)........... 15

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................ 6

*Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*,
  499 F.2d 1391 (3d Cir. 1974)............................................................... 10

*Elox Corp. v. Colt Indus.*, Inc.,
  No. 90 Civ. 2456, 1991 WL 263127 (4th Cir. Dec. 16, 1991) ........... 11

*GGNSC Lancaster v. Roberts*,
  No. 13 Civ. 5291, 2014 WL 1281130 (E.D. Pa. Mar. 31, 2014) ........ 5

*Great Western Mortg. Corp. v. Peacock,*
  110 F.3d 222 (3d Cir.1997).................................................................. 7

*Harris v. Green Tree Fin. Corp.*,
  183 F.3d 173 (3d Cir. 1999)................................................................. 6

*Horizon Plastics, Inc. v. Constance*,
  No. 99 Civ. 6132, 2000 WL 1176543 (D.N.J. Aug. 11, 2000)............ 12

*Inland Bulk Transfer Co. v. Cummins Engine Co.,*
332 F.3d 1007 (6th Cir. 2003) ................................................................................. 11

*J.P. Morgan Sec. Inc. & Bear, Stearns & Co., Inc. v. La. Citizens Property Ins. Corp.,*
712 F. Supp. 2d 70 (S.D.N.Y. 2010) ............................................................ 9, 11, 12

*John Hancock Mut. Life Ins. Co. v. Olick,*
151 F.3d 132 (3d Cir.1998) ........................................................................................ 6

*Kidder, Peabody & Co., Inc. v. Greenblatt,*
No. 98 Civ. 3155, 1999 WL 672661 (E.D. Pa. Aug. 25, 1999) ............................... 12

*Kidder, Peabody & Co., Inc. v. Zinsmeyer Trusts P'ship,*
41 F.3d 861 (2d Cir. 1994) ................................................................................... 7, 10

*Kusner v. First Pa. Corp.,*
531 F.2d 1234 (3d Cir. 1976) ................................................................................... 15

*Liberte Capital Group, LLC v. Capwill,*
148 F. App'x 413 (6th Cir. 2005) ......................................................................... 8, 10

*MBI Acquisition Partners, L.P. v. Chronicle Publ'g. Co.,*
No. 01 Civ. 177, 2001 WL 1478812 (W.D. Wis. Sept. 6, 2001) .............................. 15

*McMahan & Co. v. Wherehouse Entm't, Inc.,*
65 F.3d 1044 (2d Cir. 1995) ..................................................................................... 15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,*
49 F.3d 323 (7th Cir. 1995) ..................................................................................... 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,*
473 U.S. 614 (1985) .................................................................................................... 6

*MONY Sec. Corp. v. Bornstein,*
390 F.3d 1340 (11th Cir. 2004) ............................................................................ 8, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ........................................................................................................ 7

*Multi-Fin. Sec. Corp. v. King,*
386 F.3d 1364 (11th Cir. 2004) ............................................................................ 8, 10

*O.N. Equity Sales Co. v. Steinke,*
504 F. Supp. 2d 913 (C.D. Cal. 2007) ........................................................................ 8

*Patten Sec. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.,*
819 F.2d 400 (3d Cir. 1987) ....................................................................................... 9

*Prudential Sec., Inc. v. Desmond,*
    No. 96 Civ. 8407, 1997 WL 570926 (E.D. Pa. Sept. 5, 1997)..........................12

*Puleo v. Chase Bank USA, N.A.,*
    605 F.3d 172 (3d Cir. 2010)...............................................................10

*Rogen v. Ilikon Corp.,*
    361 F.2d 260 (1st Cir. 1966)..............................................................15

*Roll v. Singh,*
    No. 07 Civ. 4136, 2008 U.S. Dist. LEXIS 50125 (D.N.J. June 26, 2008) ......................15

*Special Transp. Servs., Inc. v. Balto,*
    325 F. Supp. 1185 (D. Minn. 1971).........................................................15

*UBS Fin. Servs. Inc. v. Carilion Clinic,*
    880 F. Supp. 2d 724 (E.D. Va. 2012) ....................................................9, 11

*UBS Fin. Servs., Inc. v. Carilion Clinic,*
    706 F.3d 319 (4th Cir. 2013) .........................................................8, 9, 13

*UBS Fin. Servs. Inc. v. City of Pasadena,*
    No. 12 Civ. 5019, 2012 WL 3132949 (C.D. Cal. July 31, 2012) ................................9

*UBS Fin. Servs., Inc. v. W. Virginia Univ. Hospitals, Inc.,*
    660 F.3d 643 (2d Cir. 2011)..............................................................8, 9

*UBS Sec. LLC v. Allina Health Sys.,*
    No. 12 Civ. 2090, 2013 WL 500373 (D. Minn. Feb. 11, 2013) ..................................9

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574 (1960).......................................................................6

*Vaden v. Discover Bank,*
    556 U.S. 49, 129 S.Ct. 1262 (2009).......................................................5

*Wald v. 1 Fin. Marketplace Sec., LLC,*
    No. 09 Civ. 1116, 2009 WL 3209930 (E.D. Pa. Oct. 5, 2009).................................6

*Washington Square Sec. Inc. v. Aune,*
    385 F.3d 432 (4th Cir. 2004) .........................................................7, 8, 10

*Waterford Inv. Services, Inc. v. Bosco,*
    682 F.3d 348 (4th Cir. 2012) ..........................................................7, 10

iv

**Statutes**

9 U.S.C. §4 ................................................................................................................ 7

15 U.S.C. §78cc ....................................................................................................... 14

15 U.S.C. §78o-3 ..................................................................................................... 14

28 U.S.C. §1332 ......................................................................................................... 5

**Other Authorities**

Barbara Black & Jill I. Gross, *Investor Protection Meets the Federal Arbitration Act*,
    1 Stan. J. Complex Litig. 1 (2012) ............................................................... 14, 15

Norman S. Poser & James A. Fanto, *Broker-Dealer Law and Regulation § 4,*
    (4th ed. 2007) .................................................................................................... 14

## I.      INTRODUCTION

Reading Health System ("Reading" or "Plaintiff"), respectfully seeks a declaratory judgment that federal law requires that Defendant Bear Stearns & Co., Inc. ("Bear Stearns"), n/k/a J.P. Morgan Securities LLC ("JPMorgan", or collectively with Bear Stearns, "Defendant") arbitrate the claims alleged in a Statement of Claim filed by Reading with the Financial Industry Regulatory Authority ("FINRA") on February 10, 2014. [1]   Specifically, under the Federal Arbitration Act ("FAA"), a written agreement for arbitration is enforceable in federal court, and JPMorgan is bound by such an agreement, in the form of FINRA Rule 12200.   Although numerous similar claims by issuers of auction rate securities ("ARS") have been arbitrated before FINRA panels throughout the country, JPMorgan asserts that Reading must bring the claims in federal court in Manhattan.

The gravamen of Plaintiff's FINRA claims is that Bear Stearns (JPMorgan's predecessor) grossly misrepresented the nature of the ARS market when it advised Reading to issue nearly $519 million of ARS debt in four bond offerings, and enter into contemporaneous interest rate swaps covering almost $319 million of that debt.   Reading alleges it was caused great injury when JPMorgan and other banks suddenly ceased the secret support bidding that had propped up the ARS market, causing its collapse in February 2008.

Reading's FINRA Statement of Claim asserts fraud, negligent misrepresentation and breaches of duty owed Reading by Bear Stearns as underwriter and broker-dealer for Reading's ARS.   Despite the FAA's direction that written arbitration agreements be honored, despite

---

[1] Reading's FINRA Statement of Claim is annexed as Exhibit 1 to the Declaration of Lauren Wagner Pederson ("Pederson Decl."), which is filed contemporaneously herewith.   All references to the FINRA Statement of Claim ("SOC") are denoted by "FINRA SOC ¶__".   All references to the Complaint filed herewith are denoted by "Compl.¶__".   All exhibit references are to the Pederson Decl.

FINRA Rule 12200's legal status as a written arbitration agreement, and despite the fact that two of the broker-dealer agreements between Reading and Defendant contain no forum selection clause at all, and the third agreement's clause does not inveigh against arbitration,[2] Defendant says it will not use FINRA arbitration to resolve the dispute.  A fourth broker-dealer agreement between Defendant and Reading has a forum selection clause that directs actions and proceedings arising out of the agreement be brought in federal court in Manhattan.  It does not, however, reflect a mutual intention by Reading and JPMorgan to abandon arbitration – a time honored means used by FINRA members and their customers to resolve disputes – for matters arising from that broker-dealer agreement, much less all agreements.  Also, any forum clauses that may be construed to suggest that Plaintiff gave up its arbitration rights are void and unenforceable in any event under explicit provision of the Securities Exchange Act of 1934.

This Court therefore should declare that this dispute is arbitrable, and compel JPMorgan to arbitrate Reading's claims in FINRA arbitration proceedings.

## II.     SUMMARY OF RELEVANT FACTS

### A.     At Defendant's Recommendation, Plaintiff Issued Approximately $519 Million in Auction Rate Securities and Entered into Several Related Swap Derivative Contracts with Defendant's Affiliate.[3]

Beginning in 2001, Reading sought funds for capital projects relating to its facilities, buildings and equipment, and selected Bear Stearns to advise it on structure of new bond financing.

In March 2001, at Bear Stearns's recommendation, Reading issued $168,745,000 of debt in ARS form, and entered into a floating-to-fixed interest rate swap contract with a Bear Stearns

---

[2] This last broker-dealer agreement says the dispute must be resolved in New York County but does not suggest that arbitration not be used.

[3] The facts alleged in Plaintiff's FINRA SOC, Pederson Decl. Ex. 1, are only summarized here.

affiliate covering the offering.  Bear Stearns represented to Reading that by linking its ARS to a floating-to-fixed interest rate swap it could create an inexpensive and safe "synthetic" fixed rate structure.

The broker-dealer agreement between Reading and Bear Stearns governing Reading's 2001 ARS issuance contains no forum selection clause.  *See* Ex. 2 at 11.

In February 2002, again at Bear Stearns's recommendation, Reading issued an additional $90,000,000 of ARS debt.  At Bear Stearns's recommendation, Reading again entered into a swap agreement with a Bear Stearns affiliate to create a so-called synthetic fixed rate structure.

The broker-dealer agreement between Reading and Bear Stearns governing Reading's 2002 ARS offering contains no forum selection clause.  *See* Ex. 3 at 12.

In June 2005, again at Bear Stearns's recommendation, Reading issued an additional $195,000,000 of ARS debt.  At Bear Stearns's recommendation, Reading again entered into a swap agreement with Bear Stearns's affiliate covering $60,000,000 of the offering to create a partial synthetic fixed rate structure.

The broker-dealer agreement between Reading and Bear Stearns governing Reading's 2005 offerings has a forum selection clause directing that actions and proceedings arising from the agreement be brought in the United States District Court in the County of New York, *i.e.*, in federal district court in Manhattan.  *See* Ex. 4 at 14.

In December 2007, again at Bear Stearns's recommendation, Reading issued an additional $65,000,000 of ARS debt.

The broker-dealer agreement between Reading and Bear Stearns governing Reading's 2007 offering has a forum selection clause directing that actions and proceedings be brought in

the County of New York, without specifying a particular forum within the County of New York. *See* Ex. 5 at 13.   This clause does not require that disputes be brought in court.

### B.   Reading Alleged in Arbitration It Was Misled By JPMorgan Regarding Auction Rate Securities and That Reading Suffered Injury When JPMorgan Allowed the Market to Collapse.

Plaintiff has alleged in the arbitration that in February 2008 Defendant and other broker-dealers allegedly stopped placing blanket bids in ARS auctions, resulting in widespread failure of the ARS market and a sudden increase in interest owed by Reading from historical rates below 5% to up to 11%.   Throughout 2008 and the first half of 2009, Reading struggled to arrange for an adequate refinancing plan while its ARS continued to reset at interest rates that varied wildly. Ultimately, Reading was forced to refinance the ARS debt into a basket of fixed and variable rate debt at great cost and under distressed circumstances.

On February 10, 2014, Reading filed a Statement of Claim against JPMorgan with FINRA, thereby submitting the ARS dispute to FINRA for arbitration pursuant to FINRA Rule 12200.  *See* Pederson Decl. Ex. 1.  The Statement of Claim alleges fraud, negligence and breach of fiduciary duty claims against Defendant in connection with ARS offerings and related swap contracts.

Specifically, Reading alleges in its FINRA SOC that Bear Stearns misrepresented the nature of the ARS market, suggesting that the market enjoyed natural investor demand when in fact Bear Stearns had secretly kept Reading's ARS auctions afloat from the outset.  Bear Stearns failed to disclose (as subsequently reported by Federal Reserve employees) that without secret bidding ARS bids auctions would fail, the ARS market would collapse, interest rates on all of Reading's ARS would rise to unacceptable levels and require refinancing, and that the synthetic fixed rate structure created by swaps on almost $319 million of its ARS debt would no longer operate properly, leaving Reading with very expensive obligations under now useless swaps.

Following the commencement of the arbitration, counsel for Defendant JPMorgan indicated that the bank would seek to enjoin FINRA arbitration in the United States District Court for the Southern District of New York due to the presence of forum selection clauses present in the broker-dealer agreement governing Reading's 2005 and 2007 ARS issuances. Reading now respectfully moves this Court to compel arbitration, thereby allowing Reading to exercise the  agreement between it and Defendant JPMorgan to arbitrate this customer-member dispute.

## III.      LEGAL ARGUMENT

### A.      This Court has Jurisdiction Over The Instant Motion And Reading's Complaint to Compel Arbitration.

This Court has jurisdiction over Reading's Complaint and Motion to Compel Arbitration because it would also have jurisdiction over the underlying substantive dispute.  *Vaden v. Discover Bank*, 556 U.S. 49, 61-62 (2009), cited by *GGNSC Lancaster v. Roberts*, No. 13 Civ. 5291, 2014 WL 1281130, at *2 (E.D. Pa. Mar. 31, 2014).  This court would have jurisdiction over the underlying dispute pursuant to 28 U.S.C. § 1332 because parties are diverse and the amount in controversy exceeds $75,000.  Specifically, Plaintiff Reading is a Pennsylvania not-for-profit corporation with its principal place of business in West Reading, Pennsylvania, Defendant J.P. Morgan Securities LLC, is a registered brokerage firm incorporated in Delaware with a principal place of business in New York, New York, and Plaintiff seeks a recovery of damages totaling millions of dollars.  Compl. ¶6-7; FINRA SOC ¶82. [4]

---

[4] In addition, Bear Stearns & Co., Inc. was at all relevant times a registered broker-dealer incorporated and headquartered in New York.  Compl. at ¶8.

**B.      Strong Federal Policy Creates A Presumption In Favor of Arbitration.**

The Federal Arbitration Act (the "FAA") reflects a strong federal policy in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614 (1985). A motion seeking an order to arbitrate a particular dispute "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

The parties' intentions to arbitrate are "generously construed" as to issues of arbitrability; any ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. *Mitsubishi Motors Corp.*, 473 U.S. at 626.  In the absence of any express provision excluding a particular grievance from arbitration, "only the most forceful evidence" of a purpose to exclude the claim from arbitration can prevail. *Warrior & Gulf Navigation Co.*, 363 U.S. at 584-85.  Indeed, the federal policy favoring arbitration is so strong that the "Arbitration Act requires district courts to compel arbitration of pendent arbitration claims . . . even where the result would be . . . inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

In the Third Circuit, a district court may "compel arbitration if a party to an arbitration agreement institutes an action that involves an arbitrable issue and one party to the agreement has failed to enter arbitration." *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999).  A two-prong inquiry governs whether arbitration should be compelled and litigation in federal court stayed:  "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? [and] (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *Wald v. 1 Fin. Marketplace Sec., LLC*, No. 09 Civ. 1116, 2009 WL 3209930, at *4 (E.D. Pa. Oct. 5, 2009) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*,

6

151 F.3d 132, 137 (3d Cir.1998)).  In the instant matter, the answer to both of these questions is

indisputably "yes".  This Court should therefore apply the Third Circuit's "**strong presumption**

**in favor of arbitration**," and compel Defendant to arbitrate Plaintiff's claims.  *Wald*, 2009 WL

3209930, at *5 (emphasis added) (citing *Great W. Mortg. Corp. v. Peacock,* 110 F.3d 222, 228

(3d Cir. 1997) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24

(1983)).

### C.  The Federal Arbitration Act and FINRA Rule 12200 Require JPMorgan to Arbitrate Reading's Claims

The FAA provides, at 9 U.S.C. §4, that "A party aggrieved by the alleged . . . refusal of

another to arbitrate under a written agreement for arbitration may petition [a district court having

jurisdiction] for an order directing that such arbitration proceed in the manner provided for in

such agreement."  A written agreement to arbitrate "shall be valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id.* at § 2.

So long as the agreement for arbitration was validly made and not complied with, "the court shall

make an order directing the parties to proceed to arbitration in accordance with the terms of the

agreement."  *Id.* at §4.

It is long settled that NASD Rule 10301, today FINRA Rule 12200,[5] "constitutes an

'agreement in writing'" within the scope of the FAA.  *Kidder, Peabody & Co., Inc. v. Zinsmeyer

Trusts P'ship*, 41 F.3d 861, 863-64 (2d Cir. 1994) (NASD Rule 10301, today FINRA Rule

12200 "constitutes an 'agreement in writing.'"); *see also Waterford Inv. Servs., Inc. v. Bosco*,

---

[5] Rule 12200 of the FINRA Code of Arbitration Procedures, effective April 16, 2007, is an amended version of former NASD Rule 10301. Because the two rules are "substantively equivalent," the analysis of NASD Rule 10301 applies equally to FINRA Rule 12200. *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d at 353 n.5 (citing *Wash. Square Sec. Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004); *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)).

682 F.3d 348, 353 (4th Cir. 2012) (quoting *Wash. Square Sec. Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004)); *MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004) ("The NASD Code itself constitutes the agreement.") (quoting *Multi-Fin. Sec. Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004)); *Liberte Capital Grp., LLC v. Capwill*, 148 F. App'x 413, 416 (6th Cir. 2005) (unpublished) ("[W]e are mindful that the NASD Code constitutes an 'agreement in writing' under the Federal Arbitration Act.").[6]

FINRA is a self-regulatory organization established under Section 15A of the Securities Exchange Act of 1934.  It has "the authority to exercise comprehensive oversight over 'all securities firms that do business with the public'" under supervision of the United States Securities Exchange Commission (the "SEC").  *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011); *see also UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 322 (4th Cir. 2013) (same).  JPMorgan's FINRA membership is of course uncontested, as is that of its predecessor, Bear Stearns.  *C.f.* Compl. ¶7.  "Upon joining FINRA, a member organization agrees to comply with FINRA's rules." *W. Virginia Univ. Hosps., Inc.*, 660 F.3d at 648 (citing FINRA's bylaws).  Thus, JPMorgan is "bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein."  *Id.* at 649.

FINRA Rule 12200 requires that a FINRA member arbitrate a dispute arising in connection with the member's business activities when arbitration is sought by the member's customer:

Parties **must** arbitrate a dispute under the Code if:

---

[6] *See also O.N. Equity Sales Co. v. Steinke*, 504 F. Supp. 2d 913, 916 (C.D. Cal. 2007) ("[N]umerous courts have held that 'even if 'there is no direct written agreement to arbitrate . . ., the [NASD] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants.'").

- Arbitration under the Code is either:

  (1) Required by a written agreement, or

  (2) **Requested by the customer**;

  - **The dispute is between a customer and a member** or associated person of a member; and

  - **The dispute arises in connection with the business activities of the member** or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

(emphasis added.)

JPMorgan cannot credibly dispute Reading's status as its "customer" under FINRA Rule 12200, or that FINRA Rule 12200 constituted a written agreement to arbitrate between Bear Stearns and Reading. Nor can it credibly dispute that Reading's claims "arise[] in connection with business activities" of Bear Stearns.[7] Every court that has addressed the issue has held that

---

[7] *Patten Sec. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 406 (3d Cir. 1987) (abrogated on grounds not relevant here) (issuers of securities "is a public customer entitled to demand NASD arbitration"); *W. Virginia Univ. Hosps., Inc.*, 660 F.3d at 650 (ARS issuer was "customer" because it "purchased a service, specifically auction services" from its underwriter); *Carilion Clinic*, 706 F.3d at 327-28 (4th Cir. 2013) (summarizing facts and observing that the court had "little difficulty" concluding that ARS issuer was a "customer" of its underwriter); *UBS Sec. LLC v. Allina Health Sys.*, No. 12 Civ. 2090, 2013 WL 500373, at *5 (D. Minn. Feb. 11, 2013) ("In light of the business relationship between Allina and UBS, and the services paid for and received by Allina, the Court finds that Allina is a customer of UBS as the term is defined in FINRA Rule 12100(i)."); *UBS Fin. Servs. Inc. v. City of Pasadena*, No. 12 Civ. 5019, 2012 WL 3132949, at *4 (C.D. Cal. July 31, 2012) ("Defendant hired Plaintiffs to perform the underwriting services on both of its ARS offerings. Given the business relationship existing between the two parties and the services received by Defendant, the Court finds that Defendant is likely a customer of Plaintiffs as that term is defined in Rule 12100(i)."); *J.P. Morgan Sec. Inc. & Bear, Stearns & Co., Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 80 (S.D.N.Y. 2010) ("This dispute arises directly from the parties' issuer/underwriter relationship – which, as discussed, did create a customer relationship between the parties.").

In fact, "[n]o court has taken the opposite view: that an issuer of securities that purchased services from a broker-dealer is not a customer." *UBS Fin. Servs. Inc. v. Carilion Clinic*, 880 F. Supp. 2d 724, 731 (E.D. Va. 2012) *aff'd*, 706 F.3d 319 (4th Cir. 2013).

an issuer of securities such as Reading is a "customer" under FINRA Rule 12200 entitled to demand arbitration of a dispute with its underwriter.[8] Every court that has addressed the issue also has acknowledged that Rule 12200 constitutes a written agreement for arbitration between a FINRA member and its customer. *Id.*

Here, Defendant JPMorgan, a FINRA registered broker-dealer (CRD #79), is the successor-in-interest to Bear Stearns & Co., Inc., also a FINRA registered broker-dealer at all relevant times.  Bear Stearns served as the underwriter and broker-dealer on each of the Reading's four municipal ARS issuances.  Reading was Bear Stearns's customer.  Accordingly, FINRA Rule 12200 constitutes the "written agreement for arbitration" under the FAA requiring JPMorgan to arbitrate the dispute set forth in the FINRA Statement of Claim filed by Reading on February 10, 2014.[9]

### D.   The Eastern District of Pennsylvania is the Appropriate Court to Decide Whether JPMorgan Must Arbitrate This Dispute.

A district court hearing a motion to compel arbitration need only determine the "threshold" issue of "whether the parties have submitted a particular dispute to arbitration." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (*en banc*) (citations and quotations omitted).  This threshold inquiry is to be undertaken by a district court in the judicial district where arbitration would be held.  *See, Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*,

---

[8] *E.g., Kidder*, 41 F.3d at 863-64; *Waterford*, 682 F.3d at 353; *Aune*, 385 F.3d at 435; *MONY Secs. Corp.*, 390 F.3d at 1342; *Multi-Fin. Sec. Corp.*, 386 F.3d at 1366; *Liberte Capital Grp., LLC*, 148 F. App'x at 416.

[9] JPMorgan's acceptance of FINRA Arbitration as an appropriate dispute resolution forum is evidenced by its involvement in many FINRA arbitrations over municipal ARS disputes, and over 21 published FINRA customer dispute awards during 2014 (while FINRA arbitration is a confidential forum, final awards are publicly available).  *See* FINRA Arbitration Awards Online, http://finraawardsonline.finra.org/ (last visited Jan. 16, 2015).

499 F.2d 1391, 1394 (3d Cir. 1974) ("unambiguous statutory language" of the FAA "limit[s] the district court's power to order arbitration outside of the district.").[10]

Under FINRA Rule 12213, FINRA arbitrations are held at "the hearing location closest to the customer's residence at the time of the events giving rise to the dispute."  Reading is located in FINRA District 9 (Philadelphia), within this Court's judicial district.[11]  Accordingly, any FINRA arbitration between Reading and JPMorgan will occur in this judicial district.[12]  Therefore, a court in this judicial district, **_and no other_**, may hear Reading's complaint and motion seeking enforcement of Reading's written agreement to arbitrate its customer dispute

---

[10] Circuits adopting the Third Circuit's analysis include the Sixth, Seventh, Tenth and arguably the Fourth Circuits.  *See Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) ("[T]he Federal Arbitration Act prevents federal courts from compelling arbitration outside of their own district."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995).("[T]he inescapable logical import [where] the location of arbitration is preordained, is that the statute limits the fora in which § 4 motions can be brought."); *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) ("[W]e agree with plaintiffs and the district court that a third approach taken by a majority of courts is the correct approach. This majority view holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4."); *see also Elox Corp. v. Colt Indus.*, Inc., No. 90 Civ. 2456, 1991 WL 263127, at *1 (4th Cir. Dec. 16, 1991) ("Further, if a court orders arbitration, the arbitration must be held in the same district as the court."); *Carilion Clinic*, 880 F. Supp. 2d at 733 n.6 ("While the Fourth Circuit has not addressed this issue, this Court has noted that the Fourth Circuit would likely follow the approach of the Seventh Circuit in *Lauer*."); *Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.*, 628 F. Supp. 2d 674, 683 (E.D. Va. 2009) ("The Fourth Circuit has yet to rule directly on whether, pursuant to § 4 of the FAA, a district court has the authority to compel arbitration outside of its geographic jurisdiction. With this in mind, the well-reasoned majority position articulated above is highly persuasive. Furthermore, the Fourth Circuit has strongly implied that it would align itself with the majority position if it were squarely presented with the issue.").

[11] *See* FINRA District Offices, http://www.finra.org/Industry/Contacts/p085520 (last visited Mar. 19, 2015).

[12] JPMorgan cannot challenge the venue of the arbitration in Philadelphia in connection with this motion.  *See La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d at 74-75 (denying JPMorgan's motion to enjoin FINRA arbitration initiated by municipal ARS issuer) ("While JPMorgan and Bear Stearns [can] challenge the venue of the arbitration, this challenged must be heard by the arbitrators . . . Accordingly, while the arbitration proceedings may ultimately occur in New York, for purposes of this motion for preliminary injunction, the arbitration must be treated as though it will occur within the Eastern District of Louisiana.").

with JPMorgan.  *Kidder, Peabody & Co., Inc. v. Greenblatt*, No. 98 Civ. 3155, 1999 WL 672661, at *4 n.10 (E.D. Pa. Aug. 25, 1999) ("Under 9 U.S.C. §4, a court may not enjoin or compel an arbitration which is to take place in another district.").[13]

### E.      All of Plaintiff's ARS Claims Should Be Arbitrated.

#### 1.      *Reading's Broker-Dealer Agreements Do Not Preclude FINRA Arbitration.*

Insofar as Reading's 2001 and 2002 broker-dealer agreements say nothing about dispute resolution, and the 2007 agreement says nothing about resolution in court, there is no basis to suggest any forum other than FINRA arbitration under Rule 12200 for resolution of the parties' dispute as it respects those ARS offerings.  Accordingly, Reading's already filed FINRA arbitration should proceed in Philadelphia as to those offerings in all events.

The broker-dealer agreements governing Reading's 2005 and 2007 offerings, as noted, do contain forum selection clauses directing dispute resolution to New York County, and with respect to the 2005 agreement, to a federal court in New York County.  Neither of these provisions, however, reflects intention by the parties to abandon the long-used FINRA arbitration forum to resolve disputes over broker-dealer business in favor of costly and time-consuming litigation in a court located in New York County.  Rather, the 2005 forum selection clause merely reflects an understanding that any court litigation that might arise must be brought in not

---

[13] *See also*, *Prudential Sec., Inc. v. Desmond*, No. 96 Civ. 8407, 1997 WL 570926, at *3 (E.D. Pa. Sept. 5, 1997) ("Even though venue may otherwise be proper in this district under 28 U.S.C.A. § 1391(a), since Prudential is seeking to direct the scope of a pending arbitration in another district, I conclude that the venue provisions of § 4 is controlling."); *Horizon Plastics, Inc. v. Constance*, No. 99 Civ. 6132, 2000 WL 1176543, at *3 (D.N.J. Aug. 11, 2000) (denying motion to enjoin arbitration as "courts have require[d] a geographic link between the site of the arbitration and the district [court].") internal citations omitted); *Bao v. Gruntal & Co. Inc.*, 942 F. Supp. 978 (D.N.J. 1996) (court may only enjoin arbitration in its own district); *La. Citizens Property Ins. Corp.*, 712 F.Supp. at 83 (municipal ARS issuer may only seek order compelling arbitration in the judicial district where the FINRA arbitration pending).

just any court but in a designated court, *i.e.*, it was a prohibition against forum shopping any litigation.  The 2007 provision on its face does not reflect an agreement to resolve a dispute in a court at all.  Regardless, the parties did not intend to preclude use of the less formal resolution of customer disputes through FINRA arbitration as a forum to resolve customer disputes.

This reasoning was recently used by the Fourth Circuit to deny a broker-dealer's attempt to enjoin a FINRA arbitration initiated by a municipal issuer:

> We find it a more natural reading of the forum selection clause to require that any *litigation* arising out of the agreement would have to be brought in the United States District Court in New York County . . . . And we believe that it would never cross a reader's mind that the clause provides that the right to FINRA arbitration was being superseded or waived.   No word even suggesting supersedence, waiver, or preclusion exists in the sentence.

*Carilion Clinic*, 706 F.3d at 330.

Additionally, Reading's broker-dealer agreements are all the same in respects relevant to its customer dispute with JPMorgan.  The gravamen of Reading's arbitration claim arising from JPMorgan's conduct is the same for all four ARS issuances.  The claim is that Reading never would have used ARS as its debt instrument knowing, as Bear Stearns did, that Reading's ARS auctions, and indeed auctions constituting the entire municipal ARS market, would be and were utterly dependent for their viability on Bear Stearns and other banks' secret bidding.  Insofar as FINRA arbitration will necessarily in all events be used to resolve the dispute between the parties in respect of Reading's 2001, 2002 and 2007 ARS offerings, and the facts, law and equity surrounding all of Reading's ARS offerings are the same, that arbitration should also be used to resolve the dispute as it respects the 2005 ARS offering as well.

2.      *Section 29(a) of the Securities Exchange Act of 1934 Prevents Waiver of FINRA Arbitration.*

Federal law prevents waiver of Plaintiff's right to arbitration of its customer dispute with JPMorgan.  To the extent the forum selection clauses could be construed to bar use of arbitration under FINRA Rule 12200, they are void under the Securities Exchange Act of 1934.

In particular, Section 29(a) of the Exchange Act provides that "*Any condition, stipulation, or provision* binding any person to waive compliance with any provision of this [Act] or of any rule or regulation thereunder, *or of any rule of a self-regulatory organization, shall be void.*"  15 U.S.C. § 78cc (emphasis added).  As stated, FINRA is a "self-regulatory organization," or "SRO," overseen by the SEC pursuant to Section 15A of the Exchange Act.  *See* 15 U.S.C. §78o-3.[14] Accordingly, under Securities Exchange Act, *any provision* of a customer's brokerage agreement that attempts to waive a customer's right to FINRA arbitration under Rule 12200 is void.[15]

Courts regularly construe Section 29(a) to void contractual provisions inserted by banks in efforts to "contract around" their regulatory obligations, to the extent those provision conflict with or waive protections put in place by stock exchanges or SROs.  These have included "non-

---

[14] Congress has long-recognized the importance of SROs to effectuating the regulatory goals of the Exchange Act.  *See* Barbara Black & Jill I. Gross, *Investor Protection Meets the Federal Arbitration Act*, 1 Stan. J. Complex Litig. 1, 16 n.98 (2012) (with Barbara Black) (citing Norman S. Poser & James A. Fanto, *Broker-Dealer Law and Regulation § 4* (4th ed. 2007)) ("In enacting the Exchange Act in 1934, Congress determined to rely, to a great extent, on industry self-regulation and designated national securities exchanges as SROs because they were already in existence as organizations that regulated their members.  In 1938, Congress amended the Exchange Act to authorize the registration of national securities associations to regulate brokers in the over-the-counter market. FINRA is the only registered national securities association. In 1975, Congress amended the Exchange Act to give the SEC broad new powers over the SROs, including the power to review all their proposed rules and to require them to adopt, change or repeal any rules.")

[15] *See* Black & Gross, *Investor Protection, supra* at 22.

14

reliance" clauses in stock purchase agreements,[16] "no-action" clauses in indentures,[17] clauses that provide for an alternative remedy,[18] or clauses that specify indemnification is the sole remedy.[19] *See generally* Black & Gross, *Investor Protection,* supra at 21.

Accordingly, the forum selection clauses present in the 2005 and 2007 broker-dealer agreement are void to the extent they are being advanced to preclude Reading's right to FINRA arbitration.

## IV.       CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court render a Declaratory Judgment ordering Defendant to arbitrate the claims alleged in the FINRA arbitration styled *Reading Health System v. Bear Stearns & Co., Inc., n/k/a J.P. Morgan Securities LLC*, FINRA No. 14-00403.

---

[16] *See, e.g., Rogen v. Ilikon Corp.*, 361 F.2d 260 (1st Cir. 1966); *Caiola v. Citibank, N.A. N.Y.*, 295 F.3d 312 (2d Cir. 2002) (synthetic trading relationship); *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174 (3d Cir. 2003); *MBI Acquisition Partners, L.P. v. Chronicle Publ'g. Co.*, No. 01-C-177-C, 2001 WL 1478812 (W.D. Wis. Sept. 6, 2001); *Roll v. Singh*, No. 07 Civ. 4136, 2008 U.S. Dist. LEXIS 50125 (D.N.J. June 26, 2008).

[17] *See, e.g., Kusner v. First Pa. Corp.*, 531 F.2d 1234 (3d Cir. 1976); *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044 (2d Cir. 1995).

[18] *See, e.g., Special Transp. Servs., Inc. v. Balto*, 325 F. Supp. 1185 (D. Minn. 1971).

[19] *Citibank, N.A. v. Itochu Int'l, Inc.*, No. 01 Civ. 6007, 2003 WL 1797847 (S.D.N.Y. Apr. 4, 2003).

March 19, 2015                                    Respectfully submitted,

                                                 WAGNER PEDERSON LLC

                                                   /s/ *Lauren Wagner Pederson*
                                                 Lauren Wagner Pederson
                                                 P.A. Bar I.D. 308542
                                                 959 Ethan Allen Road
                                                 Berwyn, PA 19312
                                                 Telephone:  (610) 937-3918
                                                 Facsimile:  (212) 751-2540

                                                 *Liaison Counsel for Reading Health System*

                                                 KIRBY MCINERNEY LLP
                                                 Randall K. Berger (*pro hac vice pending*)
                                                 Peter S. Linden (*pro hac vice pending*)
                                                 Thomas W. Elrod (*pro hac vice pending*)
                                                 825 Third Avenue
                                                 New York, NY 10022
                                                 Telephone:  (212) 371-6600
                                                 Facsimile:  (212) 751-2540

                                                 *Counsel for Reading Health System*

16